# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| MINDY CHAPMAN<br>100 North Boulevard<br>Portage, IN 46368<br><br>and<br><br>WILLIAM WHEELER<br>100 North Boulevard<br>Portage, IN 46368<br><br>Plaintiffs,<br><br>*vs*.<br><br>WESTLAKE FINANCIAL SERVICES<br>4751 Wilshire Blvd, Suite 100<br>Los Angeles, CA 90010<br><br>and<br><br>SHOOK AUTO, INC.<br>1633 Steele Hill Rd.<br>New Philadelphia, OH 44663<br><br>and<br><br>JOHN DOES 1 - 5<br><br>Defendants. | Case No. _____<br><br>COMPLAINT<br><br>[Jury Demand Endorsed Hereon] |

Plaintiffs, Mindy Chapman ("Chapman") and William Wheeler ("Wheeler") (collectively, "Plaintiffs") by and through undersigned counsel, files their Verified Complaint, against Westlake Financial Services ("Westlake"), Shook Auto, Inc. ("Shook") and John Does 1 – 5 ("Does") regarding a sale of a 2008 Ford F 450, the financing of the same, and violations of consumer protection laws in

1

attempting to collect a debt on the financing.

Plaintiffs allege, on knowledge as to their own actions, and otherwise on information and belief, as follows:

## PRELIMINARY STATEMENT

1. This is a claim by Plaintiffs Chapman and Wheeler for breach of contract, unjust enrichment, promissory estopple, breach of the Fair Debt Collection Practices Act ("FDCPA"), breach of Ohio's Consumer Sales Practices Act ("CSPA") and fraud.

2. Plaintiffs seek monetary damages in an amount in excess of $75,000.00 from all Defendants, consisting of, in part, compensatory damages, incidental and consequential damages, punitive damages, and attorney fees.

3. Plaintiffs seek a declaratory judgment as to the validity of a retail installment services contract executed by them for the purchase of a Truck.

## JURISDICTION

4. This Court has subject matter jurisdiction over this action under both diversity jurisdiction, and federal question jurisdiction.

5. The Court has subject matter jurisdiction pursuant to 15 U.S.C. § 1692k(d)

6. This Court has personal jurisdiction as the contracts at issue in the case were executed in New Philadelphia, Ohio, is Tuscawaras County, and Defendant Shook is located in New Philadelphia, Ohio.

## VENUE

7. Venue in Northern District of Ohio is proper in this case because the events giving rise to all causes of action occurred in Tuscawaras County, Ohio.

## PARTIES

8. Plaintiff, Chapman, is an individual residing in Portage, Indiana.

9. Plaintiff, Wheeler, is an individual residing in Portage, Indiana.

10. Defendant, Westlake, is a California Company located in Los Angeles, California.

11. Defendant, Shook, is an Ohio corporation doing business in New Philadelphia, Ohio.

12. Defendants, John Does 1 – 5, are individual agents and employees of Shook and Westlake.

## FACTUAL BACKGROUND

13. On or about October 25, 2019, Plaintiff purchased a 2008 Ford F 450, VIN 1FTXW43R08EA60244 (the "Truck"), from Shook, an automotive dealer located at 1633 Steele Hill Rd., New Philadelphia, OH 44663. See Exhibit 1, Retail Installment Sale Contract.

14. The cash price of the vehicle was $24,888.00.

15. Plaintiffs paid $3,900.00 as a down payment and financed the remainder.

16. Federal Truth-In-Lending disclosures listed the total sale price as $40,027.08. Id.

17. Plaintiffs purchased the Truck on the explicit verbal assurance from Shook that the Truck had been inspected by mechanics, was in good working order, and had passed their inspection. Complainants relied on these representations in choosing to purchase the Truck.

18. On the drive from New Philadelphia to Indiana, there were immediate defects discovered with the Truck.

19. Two of the tires failed to keep pressure and had to be constantly re-inflated.

20. The Plaintiffs were able to get the Truck to Lakeshore Ford in Burns Harbor, Indiana, in their parking lot but that was as far as they got. They did this on two flat tires.

21. The technicians at Lake Shore inspected the Truck on October 27, 2019. Among other things, they determined that the transmission shifted hard and that there were multiple codes for a turbo under-boost. Exhibit 2.

22. The technician further determined that there was black soot around the firewall and intake manifold. As further stated in a follow-up report, a Turbo assembly is important to diesel engine

operation as it provides proper amounts of air to an engine.

23. With turbos not working correctly, a truck will not run correctly. Id.

24. Plaintiffs towed to the Truck to Magiera Diesel Injection ("Magiera") in Crown Point, Indiana. Magiera replaced the turbos. Exhibit 3.

25. As reported by Magiera's technician, Rob Peeler, the Turbos replaced in the Truck were vital engine components.

26. Mr. Peeler stated that without the Turbos working correctly, the engine will not run properly and that they are a critical part for proper operations and are considered engine components. Exhibit 4.

27. Plaintiffs towed the Truck from Magiera to Webb Ford in Highland Indiana ("Webb"). See tow receipt, Exhibit 5.

28. Tim Ross ("Ross") a service advisor at Webb, determined that the Truck had a programmer in it that was set to the highest setting.

29. This caused over-fueling and excessive heat, causing premature damage on the internal engine components.

30. Ross noted that Ford does not approve of any use of tuner/programmer. Exhibit 6.

31. Webb reset the programmer.

32. Web also removed and replaced a piston and caps that had cracked due to excessive heat. Exhibit 7.

33. It is impossible that this programmer set to the highest setting was missed by Shook if they, as they claimed, actually inspected the Truck.

34. On January 9, 2020, the Truck broke down yet again. Plaintiffs had it towed to a repair shop. This shop found that the front cover gasket was not put on correctly and this lead to the malfunction. Either of the two previous dealerships had not touched the engine's front cover.

Exhibit 8.

35. On January 14, 2020, Webb Ford analyzed the Truck again, this time for oil leaking from the front cover area and coolant going low.

36. Webb analyzed the issue and determined that oil was leaking from both the front cover and the main seal, and that the boot was torn on the intercooler. Webb estimated $4,450.00 to repair all issues. Exhibit 9.

37. On February 20, 2020, Plaintiffs brought the Truck to Currie Motors in Valparaiso, Indiana ("Currie") complaining of a ticking noise in the engine. Exhibit 10.

38. Currie verified the concern of a noise coming from the engine and found the engine was running poorly. Currie determined that cylinder 2 was down 6% and cylinder 8 was down 4%.

39. Currie performed a power balance test and found that cylinder 2 had a misfire and cylinder 8 also had a misfire.

40. Currie tore down the engine to investigate. Currie determined that there was a bent connect rod and recommended a new engine assembly to repair the issue. Currie estimated the cost to repair was $21,252.68. Id.

41. At some point following the purchase, the Retail Installment Services Contract ("Contract") was transferred to Westlake from Shook.

42. In March of 2020, Plaintiffs began contacting Westlake, the creditor, alleging that the Truck had been rendered inoperable due to repeated engine failure.

43. Over numerous communications, Westlake assured Complainants that if the Truck was damaged due to engine failure that you would cancel the note and seek to have all monies refunded.

44. Plaintiffs provided Westlake with substantial documentation, including but not limited to the exhibits attached to this Complaint, clearly demonstrating that the Truck had essentially been sabotaged at the time of purchase.

45. On April 8, 2020, Westlake informed Plaintiffs that the "fraud department" decided not to cancel the Contract because Shook provided Westlake with proof that the Truck had no issues when Plaintiffs purchased it.

46. Westlake failed, despite request, to provide this alleged proof.

47. Also on April 8, Westlake sent a correspondence to Plaintiffs. Exhibit 11.

48. The Correspondence stated that Westlake performed a "customer interview" with Plaintiffs on October 28, 2019 in which Westlake claimed Plaintiffs stated that they were satisfied with the vehicle and the terms of the contract.

49. This call took place prior to the diagnosis from Lakeshore Ford of failed turbos and was about whether or not the Plaintiffs understood the terms, length and amount of the loan repayment. It was not about satisfaction with the Truck as alleged by Westlake.

50. On October 28, 2019, the Truck was being worked on by a mechanic because it had broken down and needed to be towed.

51. Westlake's assertion that the Plaintiffs told Westlake they were satisfied with the Truck after it had immediately broken down is a complete fabrication.

52. Westlake also stated that Westlake's policy is that "merchantability claims are limited to the first 30 days or 1,000.00 miles of the contract and only if the issued [sic] are caused by major engine or transmission problems." Id.

53. Westlake further claimed that Westlake "reviewed the invoices provided" and claimed that they do not reflect any "of engine or transmission issues" [sic]. Id.

54. There is no possible way that Westlake reviewed invoices produced and attached to this Complaint and concluded that there was no engine or transmission issues.

55. The Truck failed as it was being driven away from the lot with catastrophic engine failure and had to be towed to a location for engine repairs.

56. On April 14, 2020, undersigned called Westlake and informed them that he was representing Plaintiffs. See contemporaneous email, Exhibit 12.

57. On April 15, 2020, Westlake sent a request for payment directly to Plaintiffs via email. Exhibits 13.

58. On April 23, 2020, undersigned sent a letter of representation via mail and email to Westlake demanding that Westlake cease communication with Plaintiffs regarding the alleged debt and communicate solely with undersigned. Exhibits 14 and 15.

59. On April 25, 2020, Westlake sent an additional written collections attempt to Plaintiffs. Exhibit 16.

60. On April 30, undersigned again contact Westlake via phone and email stating that all communication must go through him as Plaintiffs were consumers represented by him.

61. Undersigned informed Westlake that they were in violation of the FDCPA and demanded that the legal department contact him. Exhibit 17.

62. Westlake never provided a written response to undersigned, nor called him.

63. On May 10, 2020, Westlake sent another collection letter to Plaintiffs. Exhibit 18.

64. On May 19, Westlake sent another electronic collections attempt to Plaintiffs. Exhibit 19.

65. This lawsuit followed.

## COUNT ONE: BREACH OF CONTRACT

66. Plaintiff realleges and incorporates paragraphs 1 through 65 hereof, as if fully rewritten herein.

67. In order to substantiate a breach of contract claim, a party must establish four elements:

    a. A binding contract or agreement was formed;

    b. the non-breaching party performed its contractual obligations;

    c. the other party failed to fulfill its contractual obligations without legal excuse; and

    d. the non-breaching party suffered damages as a result of the breach." *Textron Fin. Corp. v.*

*Nationwide Mut. Ins. Co.*, 115 Ohio App.3d 137, 144, 684 N.E.2d 1261 (9th Dist.1996), citing *Garofalo v. Chicago Title Ins. Co.*, 104 Ohio App.3d 95, 108, 661 N.E.2d 218 (8th Dist.1995).

68. A binding contract was formed between Shook and Plaintiffs.

69. Shook breached its contract by selling Plaintiffs a defective Truck.

70. Plaintiffs materially performed under the contract.

71. Plaintiffs have incurred substantial costs in repairing the Truck, which remains unusable.

72. A contract for repayment of debt exists between Plaintiffs and Westlake.

73. Westlake is required to vacate the Contract in the event that the Truck had engine damage.

74. The Truck had engine damage.

75. Westlake has refused to cancel the Contract.

76. Plaintiffs have been damaged by Westlake's refusal to cancel the Contract.

77. By reason of the foregoing, Shook and Westlake are liable in an amount in excess of $75,000.00, plus reasonable attorney fees and costs.

## COUNT TWO: UNJUST ENRICHMENT

78. Plaintiffs reallege and incorporates paragraphs 1 - 77 hereof, as if fully rewritten herein.

79. In an abundance of caution, Plaintiffs plead in the alternative that Defendants' conduct constitutes unjust enrichment.

80. A successful claim of unjust enrichment requires that:
    a. a benefit has been conferred by a plaintiff upon a defendant;
    b. the defendant had knowledge of the benefit; and
    c. the defendant retained the benefit under circumstances where it would be unjust to do so without payment. *Chef Italiano v. Crucible Dev. Corp.*, 9th Dist. No. 22415, 2005-Ohio-4254, 2005 WL 1963027, at ¶ 26.

81. Unjust enrichment occurs when a person "has and retains money or benefits which in justice and equity belong to another." *Hummel v. Hummel* (1938), 133 Ohio St. 520, 528, 11 O.O. 221, 14 N.E.2d 923.

82. Plaintiffs conferred a benefit on Defendants when they purchased the Truck and made payments on the indebtedness.

83. Defendant Shook sold a Truck that was effectively sabotaged at the time of purchase.

84. Defendants had knowledge of receipt of the benefit.

85. Defendants retained the benefit.

86. By reason of the foregoing, Defendants are liable in an amount in excess of $75,000, plus reasonable attorney fees and costs.

## COUNT THREE: FRAUD

87. Plaintiffs reallege and incorporates paragraphs 1 - 86 hereof, as if fully rewritten herein.

88. Fraud is defined as:

    a. a representation or, where there is a duty to disclose, concealment of a fact;

    b. which is material to the transaction at hand;

    c. made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred;

    d. with the intent of misleading another into relying upon it;

    e. justifiable reliance upon the representation or concealment; and

    f. a resulting injury proximately caused by the reliance. *Williams v. Aetna Fin. Co.* (1998), 83 Ohio St.3d 464, 475, 700 N.E.2d 859, 868.

89. Shook, through its sales representative, John Doe, represented to Plaintiffs that the Truck had been fully inspected and that there was nothing wrong with the Truck.

90. Shook did not inspect the Truck.

91. In the alternative, Shook did inspect the Truck, and found the defect, but intentionally misrepresented to Plaintiffs that it passed inspection.

92. These representations were made on or about October 25, 2019 directly to Plaintiffs.

93. These representations were the point of the transaction, and therefore material.

94. John Doe, as an agent of Shook, made this representation falsely with knowledge of its falsity.

95. John Doe, as an agent of Shook, intended that Plaintiffs rely on their false representations.

96. Plaintiffs justifiably relied on the false representations of John Doe acting as agent for Shook.

97. Plaintiffs were proximately injured by paying funds for the Truck and incurring indebtedness on the Truck.

98. By reason of the foregoing, John Doe and Shook are is liable in an amount in excess of $75,000.00, punitive damages, emotional damages, and reasonable attorney fees and costs.

### COUNT FOUR: PROMISSORY ESTOPPLE

99. Plaintiffs reallege and incorporate paragraphs 1 - 98 hereof, as if fully rewritten herein.

100. Westlake and John Doe affirmatively promised to Plaintiffs that they would cancel the note if they provided evidence of engine failure.

101. Plaintiffs provided evidence of engine failure.

102. Plaintiffs underwent significant effort to demonstrate the Truck suffered from engine failure by obtaining numerous opinions from mechanics.

103. Plaintiffs relied on this promise by Westlake.

104. Westlake has refused to cancel the note, despite receiving evidence that the Truck had engine damage at the time of purchase.

105. By reason of the foregoing, Westlake and John Doe are liable in an amount in excess of $75,000.00, punitive damages, emotional damages, and reasonable attorney fees and costs.

## COUNT FIVE: BREACH OF FDCPA

106. Plaintiffs reallege and incorporate paragraphs 1 - 105 hereof, as if fully rewritten herein.

107. Westlake's principal purpose is the collection of debts, making it a debt collector. 15 U.S.C. § 1692a(6); *McMahon v. LVNV Funding, LLC*, 301 F. Supp. 3d 866, 883 (N.D. Ill. 2018).

108. Plaintiffs are consumers under the FDCPA. 15 U.S.C. § 1692a(3).

109. Westlake violated the Fair Debt Collections Practices Act ("FDCPA") by communicating repeatedly with the Plaintiffs after learning that they were represented by undersigned counsel. 15 U.S.C. § 1692c(a)(2).

110. Westlake is liable for damages to Plaintiffs for actual damages, additional statutory damages, costs of the action, and reasonable attorney fees. 15 U.S.C. § 1692k(a)(1 – 3).

## COUNT SIX: BREACH OF OHIO CONSUMER SALES PRACTICES ACT ("CSPA")

111. Plaintiffs reallege and incorporate paragraphs 1 – 110 hereof, as if fully rewritten herein.

112. Plaintiffs are consumers under the CSPA. R.C. 1345.01(D).

113. Defendants are suppliers under the CSPA. R.C. 1345.01(C).

114. Westlake violated the CSPA when the violated the FDCPA.

115. Westlake violated the CSPA by representing that they would cancel the note, but refusing to do so.

116. Westlake's breach of the CSPA was done knowingly.

117. The breaches were both deceptive and unconscionable under the act, and have been so determined by published cases by the Ohio Attorney General's Office.

118. Shook and John Does violated the CSPA when they falsely represented to Plaintiffs that the Truck had been inspected and passed inspection.

119. Such violation was done knowingly.

120. The breach is both deceptive and unconscionable under the CSPA, and has been so

11

determined by published cases by the Ohio Attorney General's Office.

121. Pursuant to the CSPA, Plaintiffs are entitled to actual damages, treble damages, non-economic damages not to exceed $5,000.00 per violation, and reasonable attorney fees.

## COUNT SEVEN: DECLARATORY JUDGMENT

122. The allegations of Paragraphs 1 - 121 of this Complaint are reallaged as if fully rewritten.

123. A justiciable controversy exists between Plaintiffs and Westfield.

124. Plaintiffs seek a declaration as follows: The retail installment services contract is unenforceable.

## COUNT EIGHT: INJUNCTIVE RELIEF

125. The allegations of Paragraphs 1 – 124 of this Complaint are reallaged as if fully rewritten.

126. Plaintiffs seek an order pursuant to the CSPA upon judgment that Defendants be enjoined from providing services to consumers until they have satisfied all outstanding judgments.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request judgment in their favor on all counts awarding the following:

1) Compensatory damages,
2) incidental and consequential damages,
3) punitive damages,
4) treble damages,
5) noneconomic damages,
6) reasonable attorney fees and costs, and
7) any other such other and further relief as the Court deems just and proper.

Respectfully submitted,

*/s/ Nicholas P. Weiss*_____
Nicholas P. Weiss, LLC
Nicholas P. Weiss (0090799)
3 Severance Cir # 181576
Cleveland Heights, OH 44118
216-282-7263
nick@npweisslaw.com

Attorneys for Plaintiffs Mindy Chapman and William Wheeler

## JURY DEMAND

Demand is made for a trial by jury on all triable issues.

Respectfully submitted,

*/s/ Nicholas P. Weiss*_____
Nicholas P. Weiss, LLC
Nicholas P. Weiss (0090799)
3 Severance Cir # 181576
Cleveland Heights, OH 44118
216-282-7263
nick@npweisslaw.com

Attorneys for Plaintiffs Mindy Chapman and William Wheeler