# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISON

| | |
|---|---|
| MINDY CHAPMAN, et al., | ) CASE NO. 5:20-CV-01168-CEH |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) MAGISTRATE JUDGE |
| | ) CARMEN E. HENDERSON |
| WESTLAKE FINANCIAL SERVICES, et al., | ) |
| | ) |
| | ) **MEMORANDUM ORDER AND** |
| Defendants, | ) **OPINION** |

**I. Introduction**

This matter is before the Court on Defendant Shook Auto Inc.'s motion for summary judgment. (ECF No. 28). For the following reasons, the Court GRANTS summary judgment as to Counts Six and Eight, Plaintiffs' Ohio Consumer Sales Practices Act and injunctive relief claims. The Court DENIES summary judgment for Counts One, Two, and Three, Plaintiffs' breach of contract, unjust enrichment, and fraud claims.[1]

**II. Background**

Mindy Chapman and William Wheeler ("Plaintiffs") are a married couple that own and operate Trucking Outlaws, LLC. (ECF No. 36-1). Shook Auto Inc. ("Defendant") is a licensed used vehicle dealer in Ohio. (ECF No. 28-1). On October 25, 2019, Defendant sold a 2008 Ford

---

[1] Counts Four, Five, and Seven did not involve Defendant. (ECF No. 19).

F450 AWD ("the Truck") to Plaintiffs. (ECF No. 36-1). This dispute centers around the purchase of the Truck. (ECF No. 1).

Defendant originally bought the Truck from ADESA Cleveland Auto Auction on April 26, 2018. (ECF No. 28-1). ADESA sold the Truck "yellow light" with a "NAAA Limited Guarantee" which requires the seller to disclose defects to the engine, engine block, transmission, as well as other minor defects. (ECF No. 28-1). After purchasing, Shook took the Truck to a Blue Oval Certified Ford mechanic, Village Motors, because the check engine light was on. (ECF No. 28-1). The mechanic diagnosed that the light was on due to an improperly programed powertrain control module ("PCM"). (ECF No. 28-1). Village Motors reprogramed the PCM. (ECF No. 28-1). Plaintiffs allege that the diagnostic codes from that encounter, which were given to Defendant, showed critical problems with the Truck that Defendant never fixed or disclosed to Plaintiffs. (ECF No 36-5, 36-7). An email from the president of Village Motors, Deke Miller, confirms Defendant's receipt of the codes and also states that Defendant did not have the car inspected when it brought the Truck in.[2] (ECF No. 36-6).

After seeing the Truck online, Plaintiffs paid Defendant $500 to reserve the Truck. (ECF No. 30 at 24). Plaintiffs arrived at Shook prepared to purchase the Truck in Trucking Outlaw's name because Defendant had advertised business financing availability on its website. (ECF No. 36-1 at 2). Plaintiffs told Defendant that the Truck was going to be used for their business. (ECF No. 30 at 28). However, Defendant told Plaintiffs it would be easier to get approved if they bought the Truck as consumers. (ECF No. 36-1 at 2). On that advice, Plaintiffs purchased the Truck in

---

[2] Defendant disputes these facts. Defendant asserts that it had the Truck inspected and it was not told about the diagnostic codes by Village Motors. However, as this is a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party, Plaintiffs. *See Lindsey v. Yates*, 578 F.3d 407, 414 (6th Cir. 2009).

their own names. (ECF No. 36-1 at 2). The price of the Truck was $24,888. (ECF No. 36-1 at 2). Plaintiffs paid $3,400 as a down payment and financed the remainder. (ECF No. 36-1 at 2). Plaintiffs purchased the Truck on the verbal assurances that the Truck had been "independently verified" by a mechanic and was in "great condition." (ECF No. 36-1 at 2). Plaintiffs assert that they relied on these representations. (ECF No. 36-1 at 2). The Truck, however, was sold "as is" with no warranty. (ECF No. 30-1 at 1).

After buying the Truck, Plaintiffs started their drive back to their home in Indiana. On the way, Plaintiffs immediately ran into issues with the Truck. (ECF No. 36-1 at 3). Two of the tires blew out halfway into the drive. (ECF No. 30 at 43). After about 160 miles, the check engine light came on. (ECF No. 30 at 44). Plaintiffs took the Truck to Lakeshore Ford in Burn Harbor, Indiana. (ECF No. 30 at 47). There, technicians inspected the Truck and determined, among other things, that the transmission shifted hard and there were multiple codes for a turbo under-boost. (ECF No. 30 at 52). The turbo assembly is critical to diesel engine operation as it provides the proper amount of air to an engine. (ECF No. 30-1 at 51–52). A truck cannot run correctly when the turbos are not working correctly. (ECF No. 30-2 at 51–52). The technician also determined that there was black soot around the firewall and intake manifold. (ECF No. 30-2 at 2). Plaintiffs towed the Truck to Magiera Diesel Injection in Crown Point, Indiana. (ECF No. 30 at 53). Magiera replaced the turbos. (ECF No. 30 at 56).

Plaintiffs again towed the Truck to Webb Ford in Highland, Indiana. (ECF No. 30-1 at 58–59). There, a service advisor determined that the Truck had a programmer in it that was set to the highest setting. (ECF No. 30-2 at 53). This caused over-fueling and excessive heat, causing premature damage on the internal engine components. (ECF No. 30-2 at 53). The service advisor informed Plaintiffs that Ford does not approve the use of any tuner or programmer. (ECF No. 30-

2 at 53). The service advisor reset the programmer and removed and replaced a piston and caps that had cracked due to excessive heat. (ECF No. 30-2 at 18).

On January 9, 2020, the Truck broke down again. (ECF No. 30 at 61). Plaintiffs towed it to a repair shop. (ECF No. 30 at 62). The shop found that the front cover gasket was not put on correctly, leading to malfunction. (ECF No. 1 at 4). On January 14, 2020, Webb Ford analyzed the Truck again and determined that oil was leaking from both the front cover and the main seal and that the boot was torn on the intercooler. (ECF No. 30-2 at 28). Webb Ford estimated that it would cost $4,450 to repair all the issues. (ECF No. 30 at 76).

On February 20, 2020, Plaintiffs brought the Truck to Currie Motors in Valparaiso, Indiana after noticing a ticking noise in the engine. (ECF No. 30-2 at 46). Currie Motors determined that there was a bent connect rod and recommended a new engine assembly to repair the issue. (ECF No. 30-2 at 46). Currie Motors estimated that the cost to repair would be $21,252.68. (ECF No. 30-2 at 49). Plaintiffs stopped using the truck soon after. (ECF No. 30 at 82).

Throughout this time, Plaintiffs used the Truck almost exclusively for Trucking Outlaws. (ECF No. 30 at 40). Plaintiff uses a joint bank account for personal and Trucking Outlaw's expenses. (ECF No. 30 at 31–32). The joint account paid for the Truck and all expenses related to the Truck were deducted on Trucking Outlaw's tax returns. (ECF No. 30 at 31–32, 86). Trucking Outlaws also compensated Plaintiffs for the miles driven in the Truck. (ECF No. 29 at 45).

**III. Procedural Background**

Plaintiffs filed this action on May 28, 2020 against Shook Auto and other defendants. (ECF No. 1). Plaintiffs alleged breach of contract, unjust enrichment, fraud, breach of the Ohio Consumer Sales Practices Act ("OCSPA"), and injunctive relief against Defendant. (ECF No. 1). Plaintiff additionally asserted three other claims, but they did not involve Defendant. (ECF No. 1).

Defendant answered Plaintiffs' complaint on August 7, 2020. (ECF No. 6). Plaintiffs and Defendant consented to the undersigned's jurisdiction under 28 U.S.C. § 636(c) on January 19, 2021. (ECF No. 24).

Defendant moved for summary judgment on all remaining claims of relief on April 6, 2021. (ECF No. 28). Plaintiffs moved for an extension of time to respond on May 6, 2021. (ECF No. 32). The Court granted Plaintiffs' motion on May 17, 2021. (ECF No. 35). Plaintiffs opposed Defendant's motion for summary judgment on July 23, 2021. (ECF No. 36). Defendant timely replied on July 30, 2021. (ECF No. 37).

## IV. Standard of Review

To be entitled to summary judgment, the moving party must demonstrate that there is no genuine dispute as to any material fact and the party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A material fact is one which "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court considers all facts in the light most favorable to the non-moving party. *Lindsey v. Yates*, 578 F.3d 407, 414 (6th Cir. 2009). The Court must determine "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Anderson*, 477 U.S. at 252. Importantly, the Court may not "weigh the evidence and determine the truth of the matter." *Id.* at 249.

The burden of demonstrating the absence of a genuine dispute of material fact first rests with the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets this burden, the burden shifts to the non-movant to establish a "genuine issue" for trial via "specific facts." *Id.* at 324. The Court is required to enter summary judgment against a party that

"fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.

V. **Discussion**

    A. **Breach of Contract**

To prevail on a breach of contract claim, the plaintiff must demonstrate: 1) the existence of a binding contract or agreement; 2) the nonbreaching party performed its contractual obligations; 3) the other party failed to fulfill its contractual obligations without legal excuse; and 4) the nonbreaching party suffered damages because of the breach. *Textron Fin. Corp. v. Nationwide Mut. Ins.*, 684 N.E.2d 1261, 1266 (Ohio Ct. App. 1996) (citations omitted). A "conspicuous statement including 'as is' language will vitiate all warranties implied by law." *Gallagher v. WMK Inc.*, No. 23564, 2007 WL 4322531, at *3 (Ohio Ct. App. Dec. 12, 2007) (citations omitted). Express warranties, however, "are not so easily vitiated." *Id.* (citing *Barksdale v. Van's Auto Sales Inc.*, 577 N.E.2d 426, 428 (Ohio Ct. App. 1989)). "'Express' warranties rest on 'dickered' aspects of the individual bargain, and go so clearly to the essence of that bargain that words of disclaimer in a form are repugnant to the basic dickered terms." *Id.* (citations omitted).

Defendant argues that it did not breach the contract because the Truck was sold "as is," relieving Shook from any liability for defects in the condition. Moreover, Defendant asserts that it did not know and could not reasonably have known of any defects in the truck. Defendant claims that it took the Truck to a Blue Oval Certified Ford mechanic, Village Motors, to inspect the Truck and was not informed of any defects. Plaintiffs respond that Defendant did not have the Truck inspected and had knowledge of the Truck's condition because Village Motors gave it a list of critical problems a month prior to the sale of the Truck. Yet, the Defendant still stated that Truck

was in "good working condition" and was "independently verified." The "as is" language does not, Plaintiffs assert, exclude the failure to disclose these material problems.

Notably, whether Defendant knew about the Truck's defects is at issue here. Defendant claims it had no knowledge of the Truck's defects and had the Truck inspected without any issues. Plaintiff, however, produced a sworn statement from the President of Village Motors, Deke Miller, stating that "Village Motors, Inc. only performed reprogramming of the powertrain control module (PCM) on the vehicle, and that no further services were performed by Village Motors Inc. or its agents." (ECF No. 36-5 at 1–2). They also produced an email from Deke Miller stating "You were told wrong by Shook Auto. The RO states the customer had an ABS and Engine Light concern and that we reprogrammed the PCM which in turn put the lights out." (ECF No. 36-6). Finally, Plaintiffs submitted a record of the diagnostic codes that Deke Miller stated were provided to Defendant at time of service, listing diagnostic codes that indicated issues with the Truck's turbo. (ECF No. 36-5 at 2); (ECF No. 36-7). ³ This dispute creates a genuine issue, but it may not be a material fact with regards to the breach of contract dispute.

A material fact is one which "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. Therefore, the Court must determine, assuming Defendant did know about the Truck's defects, whether Defendant could be liable for breach of contract. If it is not possible for the Plaintiff to prevail, even if Defendant knew about the defect, then Defendant

---

³ After listing the evidence Plaintiffs provided, Defendant states "Plaintiffs did not produce *any* Fed. R. Civ. Proc. 56(c) evidence that Shook knew about any alleged problems with the vehicle." (ECF No. 37 at 4). Defendant did not explain further or cite any case law to support this assertion. The Court disagrees. Rule 56(c) provides that a party can support an assertion that a fact is genuinely dispute by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials." Fed. R. Civ. Proc. 56(c). Plaintiff produced affidavits, emails, and documents from Village Motors. (ECF No. 36). The Court finds no reason to find that this evidence does not suffice as support.

can prevail on its motion for summary judgment regarding the breach of contract claim. If Defendant did not create an express oral warranty by stating the Truck was in "great condition" and was "independently verified," the "as is" clause will preclude liability for the Truck's defects. *See Gallagher*, 2007 WL 4322531, at *5 (concluding that a car salesman's statement that a wheelchair lift on a van was "safe" could only be actionable as a breach of contract if it could be considered an express warranty). Thus, the question is whether Defendant created an oral express warranty during the sale that the Truck was in "good working condition" and had been "independently verified" and whether, if made, it survived the "as is" language of the contract.

"Express warranties are specific factual statements that go beyond mere 'puffing' of the goods by the salesman. The specificity of the comment and the context in which it was made will impact the determination of whether a statement falls into the category of 'puffing' versus affirmation of fact." *Gallagher*, 2007 WL 4322531, at *5. "[A] salesman's mere expression of opinion or commendation of the goods does not create an express warranty. The essential question is whether the representation is a clear affirmation of fact that became a part of the basis of the bargain." *Id.* For example, in *Gallagher*, the plaintiff bought a van with a wheelchair lift "as is." *Id.* During negotiations, the salesman told the plaintiff that the lift was "safe." *Id.* The Ohio Court of Appeals concluded that that statement, standing alone, is "not sufficiently specific to rise to the level of an express warranty." *Id.* The court reasoned that there was no allegation that the plaintiff asked the salesman anything more specific regarding the safety of the lift and there was no indication that the salesman repeatedly stressed the "safety" of the lift. *Id.*

Similarly, in *Jackson v. Kriegar Ford, Inc.*, a car salesman told the plaintiff that the car "performed fine" and was "good on gas." No. 88AP-1030, 1989 WL 29351, at *7 (Ohio Ct. App. Mar. 28, 1989). The Court stated that "fine" and "good" are merely "expression[s] of opinion" or

"value judgments." *Id.* "Had the salesman stated that the car got 18.2 miles per gallon, or that its performance could be judged by its acceleration from zero to sixty in four seconds, then a warranty would conceivabl[y] have arisen." *Id.*

In contrast, in *Barksdale v. Van's Auto Sales, Inc.*, the plaintiff purchased a used car from the defendant "as is." 577 N.E.2d 426, 427 (Ohio Ct. App. May 8, 1989). At the time of the sale, the buyer specifically asked about the transmission and was told there was nothing wrong with it. *Id.* at 429. Two days after buying the vehicle, the car broke down and the buyer had to rebuild the transmission. *Id.* The Ohio Court of Appeals concluded that the statement about the transmission's condition was an express warranty and the "as is" clause did not apply. *Id.* The court reasoned "[w]hen a written contract for the sale of goods provides that the goods are sold 'as is' and also disclaims all express and/or implied warranties and such provisions cannot be reasonably construed as consistent with the seller's oral express warranty, the express warranty will prevail and the inconsistent provisions deemed inoperative to the extent they are unreasonable." *Id.*

Here, Defendant told Plaintiff that the Truck was in "great condition." This statement is similar to the one in *Jackson* and is merely "puffing." However, the statement that the Truck had been "independently verified" goes beyond mere puffing. This statement was an affirmation of fact that goes to the heart of the bargain. This statement tells the Plaintiffs that a third party verified that the truck was in good condition and negates the Plaintiffs' need to inspect the Truck themselves. It is, therefore, possible that a reasonable jury could find that there was an express oral warranty created and Defendant breached said warranty. Thus, whether Defendant actually had the Truck inspected is a material fact that is genuinely disputed. As such, summary judgment is not appropriate for the breach of contract claim.

    **B.  Unjust Enrichment**

An unjust enrichment claim is a quasi-contract claim. *Hummel v. Hummel*, 14 N.E.2d 923, 927 (Ohio 1938). It is "an alternative to a breach of contract claim." *MRI Software, LLC v. W. Oaks Mall Fl, LLC*, 116 N.E.3d 694, 703 (Ohio Ct. App. 2018). It "operates in the absence of an express contract or a contract implied in fact to prevent a party from retaining money or benefits that in justice and equity belong to another." *Id.* (citations omitted). In order to prevail, the party asserting unjust enrichment must demonstrate: 1) the plaintiff conferred a benefit upon the defendant; 2) the defendant's knowledge of the benefit; and 3) the defendant's retention of the benefit under circumstances where it would be unjust to do so without payment. *Id.* at 702–03 (citations omitted). "The fact that one party has been enriched does not necessitate a finding of unjust enrichment." *Andersons, Inc. v. Consol, Inc.*, 185 F. Supp. 2d 833, 837 (N.D. Ohio 2001). (citations omitted). The plaintiff must show "a superior equity so that it would be unconscionable for [the defendant] to retain the benefit." *Directory Servs. Group v. Staff Builders Int'l, Inc.*, No. 78611, 2001 WL 792715, at *3 (Ohio Ct. App. July 12, 2001) (citations omitted).

Defendant first argues that Plaintiffs cannot seek a remedy under both a breach of contract claim and an unjust enrichment claim. Defendant then argues that Plaintiffs only paid a total of $3,900 to Defendant—the reservation fee and the down payment. In turn, Plaintiffs put between 20,000 and 30,000 miles on the truck and made a profit doing so. Additionally, Defendant argues that Shook incurred expenses in purchasing, inspecting, and selling the Truck. Thus, Defendant suggests that there was no unjust benefit. Plaintiffs, on the other hand, claim that because their down payment was for a car that Defendant knew or had reason to know had significant problems, it would be unjust under the circumstances to permit it to keep the $3,900. Plaintiffs, however, did not respond to Defendant's argument that they could not bring both a breach of contract and an unjust enrichment claim.

First, Plaintiff can allege both breach of contract and unjust enrichment. "The existence of an express contract precludes an unjust-enrichment claim only *in the absence of bad faith, fraud, or some other illegality*." *Cristino v. Adm'r*, 977 N.E.2d 742, 753 (Ohio Ct. App. 2012). Essentially, "the terms of an express contract determine the extent of a plaintiff's recovery, and prohibit any equitable relief, if the plaintiff cannot show bad faith, fraud, or some other illegality." *Id.* (citations omitted). Here, Plaintiffs have alleged fraud. As such, they can claim both breach of contract and unjust enrichment. *See id.* ("Here, [plaintiff] alleged fraud. Therefore, his claim for the breach of contract does not prevent him from also pleading a claim for unjust enrichment.").

Second, if Defendant had knowledge of the Truck's defects or falsely claimed that it had the Truck inspected, a reasonable jury could find that Defendant was unjustly enriched when Plaintiff paid Defendant the down payment. Had Plaintiffs known that the Truck was defective, they likely would not have bought the Truck and Defendant would not have received any money. Thus, summary judgment is not appropriate for Plaintiffs' unjust enrichment claim.

**C. Fraud**

The elements of fraud are: 1) "a representation or, where there is a duty to disclose, concealment of a fact;" 2) "which is material to the transaction at hand;" 3) "made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred;" 4) "with the intent of misleading another into relying upon it;" 5) "justifiable reliance upon the representation or concealment;" and 6) "resulting injury proximately caused by the reliance." *Lucarell v. Nationwide Mut. Ins.*, 97 N.E.3d 458, 472 (Ohio 2018) (quoting *Groob v. KeyBank*, 843 N.E.2d 1170, 1178 (Ohio 2006)).

Defendant argues that Plaintiffs have not presented any facts in support of their claim of fraud. Defendant again asserts that it took the Truck to be inspected and had no knowledge of any

defects. Plaintiffs again allege that Defendant represented the Truck was "in great condition" and it had been "independently verified" and inspected when Defendant never actually had the Truck inspected and was provided with a list of outstanding diagnostic codes listing the Truck's engine problems prior to sale.

Summary judgment is inappropriate for Plaintiffs' fraud claim because there is a genuine issue of material fact. Even when selling a vehicle "as-is," a used car dealer "is under a duty to use ordinary care to warn the purchaser of defects of which he has, or by the exercise of reasonable care, should have, knowledge." *Stamper v. Parr-Ruckman Home Town Motor Sales, Inc.*, 265 N.E.2d 785, 786 (Ohio 1971). Thus, if Defendant did know or should have known of the various issues with the Truck and did not disclose that information to Plaintiffs, a reasonable juror could find that Defendant committed fraud. This fact is outcome determinative. Summary judgment on Plaintiffs' claim for fraud is, therefore, not appropriate.

### D. Ohio Consumer Sales Practices Act

The OSCPA provides that "[n]o supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction." Ohio Rev. Code § 1345.02(A). A consumer transaction is a "sale, lease, assignment, . . . or other transfer of an item of goods . . . to an individual for purposes that are primarily personal, family, or household, or solicitation to supply any of these things." *Id.* § 1345.01(A). Purchases of goods for primarily business purposes are not "consumer transactions." *See Lesco v. Toyota of Bedford, Inc.*, No. 86144, 2005 WL 3475769, at *3 (Ohio Ct. App. Dec. 20, 2005) ("The act does not apply to cars purchased or leased primarily for use in the individual's business."). To determine whether a consumer transaction exists, courts look to "the point in time when the parties have entered a binding agreement." *Giffin v. Crestview Cadillac*, No. 09AP-278, 2009 WL 4809862, at *6 (Ohio Ct. App. Dec. 15, 2009) (citation omitted). "Courts

then examine the 'objective manifestations' that the purchaser made during that time period regarding how he intended to use the purchased item." *Id.* (citations omitted).

Defendant argues that because Plaintiffs specifically stated that they were going to use the Truck for business purposes and then did use the Truck for business purposes, the sale was not a "consumer transaction" and, therefore, the OCSPA does not apply. Plaintiffs respond that the sale was a consumer transaction because they used their personal funds and credit to purchase the Truck. The Court disagrees. When Plaintiffs arrived to buy the Truck, they expressly stated that they wanted the Truck for business purposes. *See* ECF No. 30 at 28 ("We told them that it was our intent to use it for the business. We let them know that we . . . owned a trucking company, obviously, you know."). They attempted to finance the Truck in Trucking Outlaw's name, but Defendant suggested they do it in their personal names. Thereafter, Plaintiffs used the Truck for Trucking Outlaw. Plaintiffs' objective manifestations establish their purchase of the Truck was for business purposes. Accordingly, the OCSPA does not apply, and summary judgment is appropriate.

Because the Court finds that the OCSPA does not apply in this case, summary judgment is also appropriate for Plaintiffs' request for injunctive relief pursuant to the OCSPA.

### VI. Conclusion

For these reasons, the Court GRANTS summary judgment to Defendant on Plaintiffs' OCSPA claim (Count Five) and injunctive relief (Count Eight) and DENIES summary judgment to Defendant on Plaintiffs' breach of contract (Count One), unjust enrichment (Count Two), and fraud (Count Three) claims.

IT IS SO ORDERED.

Dated: September 13, 2021

                                                   s/ *Carmen E. Henderson*
                                                   CARMEN E. HENDERSON
                                                   U.S. MAGISTRATE JUDGE